## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case Number: 02-80565-CIV-(MIDDLEBROOKS/JOHNSON)

JB Kartsport, L.C., a Florida
corporation

      Plaintiff,

vs.

Joost Boxoen Kartsport
BVBA n/k/a JB Kart Sport
NV, a Belgium corporation,

_____/

JUN 27 2002

FRK. USDC / SDFL

## MEMORANDUM OF LAW IN SUPPORT OF
## EMERGENCY MOTION FOR PRELIMINARY INJUNCTION BY
## PLAINTIFF, JB KARTSPORT, L.C.

Pursuant to Federal Rule of Civil Procedure 65 and Southern District Court of Florida Local Rule 7.1, Plaintiff, JB Kartsport, L.C.("JB Florida"), through its undersigned counsel, submits this Memorandum of Law in support of JB Florida's Emergency Motion for Preliminary Injunction against Defendant, Joost Boxoen Kartsport BVBA n/k/a JB Kart Sport NV, a Belgium corporation ("JB Belgium").  In support, JB Florida states:

### I.    Introduction.

The points and authorities set forth in this memorandum unequivocally demonstrate that the injunctive relief sought, to maintain the status quo and compel shipment, is customary and warranted in this case under Florida law as a result of JB Belgium's egregious and wrongful acts.   JB Florida's Verified

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

Complaint, Motion for Preliminary Injunction, and the Affidavit of Peter Bekkers are incorporated as part of this memorandum.

## II.   This Court has jurisdiction to enter the requested injunctive relief against JB Belgium.

This Court has subject matter jurisdiction to enter an injunction pursuant to 28 U.S.C. §§ 1332. Additionally, this Court has personal jurisdiction over JB Belgium under both Florida and federal law.

An evaluation of personal jurisdiction requires a two-part analysis. See Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether or not Florida's long-arm statute provides a basis for jurisdiction. Id. Second, if Florida's long-arm statute does provide coverage, the Court must then consider whether the affected entity has sufficient minimum contacts with the forum, and whether exercising personal jurisdiction over the party accords with "fair play and substantial justice." Id.

### A.   Florida's long-arm statute provides a basis for personal jurisdiction over JB Belgium.

Florida's long-arm statute provides jurisdiction over any person who breaches a contract by failing to "perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193 (g) (2001); Homestead Savings v. Ozark Financial Corp., 699 F. Supp. 1547, 1549 (S.D. Fla. 1988). Pursuant to the written exclusive distributorship agreement between JB Florida and JB Belgium (the "Agreement"), JB Belgium was obligated to use JB Florida as its exclusive distributor and,

2

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

additionally, JB Belgium was supposed to deliver the Purchased Product to JB Florida in Florida.  Moreover, the Agreement is governed by Florida law.  Personal jurisdiction by the State of Florida over JB Belgium is thus appropriate under Florida's long-arm statute.

**B.   JB Belgium's activities in this state satisfy the minimum contacts requirement and exercising personal jurisdiction over it would not offend notions of fair play and substantial justice.**

JB Belgium has minimum contacts within the State of Florida.  In order for a defendant to have "minimum contacts," it must have fair warning that an activity will subject the defendant to jurisdiction in the foreign state.  Robinson v. Gairmarco & Bill, P.C., 74 F.3d 253, 258 (11th Cir. 1996).

The circumstances surrounding JB Belgium's business with JB Florida clearly demonstrates that JB Belgium was aware that it could be haled into a Florida court to defend issues raised by the Agreement.  First, **the language of the Agreement** itself states that, "[i]t is the intention of the parties to this Agreement that the laws of the State of Florida shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties."  Agreement, ¶ 8(d).  JB Belgium was aware of the fact that litigation arising under the Agreement would take place in Florida.

Second, JB Belgium has traveled to Florida and directed its activities at the forum and thus had fair warning of the potential for litigation in this forum.  Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1357 (11th Cir.

3

2000).  Third, the way in which JB Belgium used the forum state (to distribute its products) is connected with the cause of action (breach of the Agreement concerning the distribution of those products), providing another basis for finding minimum contacts sufficient for personal jurisdiction. Sculptchair, Inc., 94 F.3d at 623. Finally, although further evidence of minimum contacts is not necessary, JB Belgium's activities also satisfy the "stream of commerce" analysis for minimum contacts in that its products were sold to consumers in this state.  Ruiz de Molina, 207 F.3d at 1357.

When a court seeks to exercise personal jurisdiction over a party who is from a foreign country, it must also consider whether it would be unduly burdensome for that party to be subject to the laws of its forum.  Sculptchair, Inc., 94 F.3d at 631. However, this element has diminished importance where the minimum contacts have been established, the conduct at issue is particularly nefarious, and the current ease of transportation and communication (e-mail and fax) can lessen that burden.  Id. at 632 (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 114 (U.S. 1987)).

Subjecting JB Belgium to personal jurisdiction in this state comports with traditional notions of fair play.  As established above, there is more than a sufficient basis for finding minimum contacts between JB Belgium and Florida.  Moreover, the state of Florida has an interest in providing relief to a citizen that has been the victim of such offensive and illegal conduct. Sculptchair, Inc., 94 F.3d at 632; Ruiz

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

de Molina, 207 F.3d at 1358.  For all of the foregoing reasons, this Court should find

personal jurisdiction over JB Belgium.

## III.   JB Belgium's improper conduct should be preliminarily enjoined.

This Court is fully empowered to grant a preliminary injunction in this case.

Fed. R. Civ. P. 65; Conagra, Inc. v. Singleton, 743 F.2d 1508, 1512 (11th Cir. 1984);

Laboratories Roldan, c. v. Texas Int'l, Inc., 902 F. Supp. 1555, 1564 (S.D. Fla. 1995).

Entry of a preliminary injunction requires proof by a plaintiff that: (1) it has a

substantial likelihood of success on the merits; (2) it will suffer irreparable injury

unless the injunction is granted; (3) the threatened injury outweighs any harm that

may be caused to the defendants as a result of the issuance of the injunction; and

(4) granting the injunction will not be adverse to the public interest.  Roldan, 902 F.

Supp. at 1564 (citations omitted).  Each of the above-mentioned elements is met

under the facts in this case.

### A.   There is a substantial likelihood that JB Florida will prevail on the merits of its state law claims.

The Verified Complaint and the Bekkers Affidavit clearly demonstrate that

JB Belgium has, without cause, terminated the Agreement and that JB Belgium is

causing irreparable harm to JB Florida and its customer relationships, reputation,

and goodwill.  In light of both JB Belgium's improper and governing Florida law, JB

Florida will likely prevail on each of its Florida state law claims.

### 1.   JB Belgium's purported termination of the Agreement was improper.

5

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

This Court is authorized, in a case like this, to enter injunctive relief to maintain the status quo of the Agreement while the litigation is pending.  See Precision Tune Auto Care, Inc. v. E. Radcliff, 731 So. 2d 744, 746 (Fla. 4th DCA 1999) (recognizing that injunctions are appropriate in franchise cases to preserve the status quo during ongoing litigation) (citing Burger Chef Systems, Inc. v. Burger Chef of Florida, Inc., 317 So. 2d 795 (Fla. 4th DCA 1975), Bateman v. Ford Motor Co., 302 F.2d 63 (3d Cir. 1962), Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970)).  See also Reinders Bros. Inc. v. Rain Bird Eastern Sales Corp., 476 F. Supp. 438, 439 (E.D. Wisc. 1979) (granting injunction to prohibit wrongful termination of a distributorship agreement).

The authority of this Court to preliminarily enjoin the purported termination and to maintain status quo exists because of the obvious and inescapable fact that the Agreement, which is governed by Florida law, was wrongfully terminated.  It is well-established in Florida that a party that seeks to terminate an exclusive distribution contract may only do so when the other committed a material or substantial breach of the contract.  See Gittlin Companies, Inc. v. David & Dash, Inc., 390 So. 2d 86, 86 (Fla. 3d DCA 1980); Burger King Corp. v. Mason, 710 F.2d 1480, 1490 (11th Cir. 1983).  See also Callins v. Abbatecola, 412 So. 2d 58, 59 (Fla. 4th DCA 1982) (holding that where a contract does not provide for conditions of termination, a party may only terminate the contract when a substantial or

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

material breach has occurred).    Put another way, a contract for a term of years cannot be terminated unilaterally by one party.  See In re Business Products, Inc. v. Accord, 90 B.R. 514, 515 (M.D. Fla. 1988).

The record evidence shows that JB Belgium terminated the Agreement because it had "no more use" for JB Florida's exclusive services anymore.  JB Florida has adhered to all terms of the Agreement and has done nothing but increase profits and grow the distribution of JB Belgium's products in the United States through sales of JB Belgium's products to JB Florida's customers.    JB Belgium, in clear derogation of the Agreement, now seeks to directly compete with JB Florida and to increase its profit margins.  JB Belgium, however, is prohibited from prematurely and improperly terminating the Agreement because the Agreement was for a specific term of ten (10) years, i.e., through August 10, 2009.  JB Florida will succeed on this claim.

2.    **JB Belgium tortiously interfered with JB Florida's business relationships, is misappropriating JB Florida's customer list/trade secrets, and is converting JB Florida's property.**

JB Belgium has contacted many of JB Florida's customers in complete disregard of the relationships that JB Florida had established with those customers. As such, JB Belgium has committed the act of tortious interference.  Additionally, in order to commit its tortious interference, JB Belgium misappropriated JB

7

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

Florida's customer list.   Finally, JB Belgium is wrongfully withholding the Purchased Property from delivery to JB Florida.[1]

JB Florida is likely to succeed on proving each of the elements of its claims. The Verified Complaint and the Bekkers Affidavit demonstrate that JB Florida has developed numerous customer relationships.   JB Belgium is only aware of the identities of JB Florida's customers because it has seen documents submitted for orders and shipping by JB Florida.  JB Belgium is not authorized to sell directly or to contact JB Florida's customers.

Moreover, JB Belgium is not authorized to withhold delivery of product for which JB Florida has paid and for which JB Florida is responsible to deliver to its customers.  An injunction (even in the mandatory form) is an appropriate form of relief to compel performance of delivery of product.  See Kellerman v. Chase & Co., 135 So. 127, 128 (Fla. 1931).

In Kellerman, the Florida Supreme Court upheld a mandatory injunction compelling a tomato vendor to deliver to its vendee products for which the vendee

---

[1] In order to establish a claim for tortious interference, a plaintiff must demonstrate the following four elements:  (1) the existence of a business relationship; (2) the defendant's knowledge of the business relationship; (3) intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach.  Gossard v. ADIA Services, 723 So. 2d 182 (Fla. 1998); Tamiami Trail Tours, Inc. v. J.C. Cottton, 463 So. 2d 1126, 1127 (Fla. 1985). Misappropriation of trade secrets/customer lists results and may be enjoined where a non-competition (or exclusivity) provision otherwise bars competition.  Sethscot Collection, Inc. v. Drbul, 669 So. 2d 1996).  The essence of a conversation is the

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

had already paid. <u>Kellerman</u>, 135 So. at 128. Like the plaintiff in <u>Kellerman</u>, JB Florida JB Florida has fully performed and is merely awaiting performance by the opposing party. <u>Id.</u> JB Florida has paid for the Purchased Product (**even before** JB Belgium's purported termination) and JB Belgium's actions in re-routing shipment have caused, and will continue to cause, further irreparable harm to JB Florida's customer relationships, goodwill, and reputation because JB Florida cannot obtain the specific goods within sufficient time to prevent the irreparable harm. JB Belgium's actions are likely to, or will cause, JB Florida to be rendered insolvent.

In light of the simple, albeit, brazen actions taken by JB Belgium in this case, there is no question that JB Florida will prevail on its state law claims. The remaining elements warranting injunctive relief are also met.

## B.   JB Florida will suffer irreparable injury unless the requested injunctive relief is granted.

JB Florida has suffered and is continuing to suffer extreme harm to its reputation, its customer relationships, and its goodwill as a result of the improper actions taken by JB Belgium. In particular, JB Florida has already felt the effects of customer dissatisfaction and concern associated with its inability to provide the products that are the subject of the Agreement.

---

present intent of the wrongdoer to deprive the person entitled to property. <u>Senfeld v. Bank of Nova Scotia Trust Co.</u>, 450 So. 2d 1157 (Fla. 3d DCA 1984).

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

Where a contracting party's activities have caused injury to a company's good will and damage to its reputation, Florida courts recognize that the element of irreparable harm is satisfied.  Grant v. Robert Half Int'l, Inc., 597 So. 2d 801, 801-02 (Fla. 3d DCA 1992).  In fact, in the case of tortious interference claims, Florida courts have held that the element of irreparable harm is *presumed*.  Special Purpose Accounts Receivable Cooperative Corp. v. Prime One Capital Company, L.L.C., 125 F. Supp. 1093, 1105 (S.D. Fla. 2000); Unistar Corp. v. Child, 415 So. 2d 733, 735 (Fla. 3d DCA 1982).[2]  Given that JB Florida's reputation and good will has already been damaged, and in light of the fact that that damage will only increase with the passage of time as this litigation progresses, injunctive relief to maintain the status quo and immediate and direct delivery of the Purchased Product is particularly appropriate.

C.     **Prevention of the continuing harm to JB Florida greatly outweighs any effect upon JB Belgium.**

The gravity of harm being inflicted upon JB Florida has been discussed in depth throughout the Verified Complaint, the Bekkers Affidavit, and this Memorandum of Law.  By contrast, JB Belgium would suffer *no* injury if the status quo were maintained during the pendency of this lawsuit.

---

[2] Moreover, JB Florida cannot mitigate the damage to its reputation by providing its customers with substitute products because the products themselves are custom-made by JB Belgium and take weeks to ship.

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

In analyzing this aspect of the preliminary injunction analysis, courts find it useful to factor in the significance of the first factor, that is, the likelihood that the movant would succeed on the merits. <u>Shell Oil Co. v. Altina Associates, Inc.</u>, 866 F. Supp. 536, 542 (M.D. Fla. 1994). In other words, where the movant is likely to succeed (and thus prove that the non-movant's conduct was wrongful), the continuing harm that the movant is likely to experience outweighs any potential injury to the non-movant. <u>Id.</u>

As demonstrated above, JB Florida is likely to succeed on the merits of its claims. However, even without the benefit of the added presumption, JB Florida presently suffers far greater harm than JB Belgium could possibly endure should an injunction not be issued. While under the present circumstances JB Florida continues to lose goodwill with its customers (in addition to the uncalculable harm to its business reputation and customer relationships), return to the status quo would simply require that JB Belgium continue using JB Florida as its distributor in the United States. In fact, JB Belgium would not suffer *any* injury were the situation returned to the status quo.[3] Under any analysis, the harm being imposed on JB Florida entirely outweighs any effect that JB Belgium might endure as a result of the injunction being granted.

---

[3] JB Belgium might argue that by terminating the Agreement it has been able to turn a larger profit through direct sales or use of other distributors, however, this potential effect is not an injury at all; rather, it is a consequence of the bargain it struck with JB Florida when it executed the Agreement in 1999.

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

**D.    Granting the injunction will not be adverse to the public
       interest.**

There is no question that granting the injunction will *further* the public

interest.  Simply put, the public interest is *not* served by allowing a party in breach

to continue to irreparably harm his opponent and to extensively damage a party's

goodwill and reputation.  See Burger King Corp. v. Lee, 766 F. Supp. 1149, 1157

(S.D. Fla. 1991).  Here, JB Belgium has improperly terminated the Agreement and,

adding  insult  to  injury,  continues  to  unfairly  interfere  with  the  customer

relationships JB Florida has spent years building.  The facts here provide a more

than adequate setting for this Court to exercise its powers of equity to enjoin future

harm by maintaining the status quo.

**V.    Conclusion.**

It is undisputed that JB Belgium has completely and blatantly disregarded

its contractual obligations under the Agreement it has with JB Florida.  In addition

to its wrongful breach of contract, however, JB Belgium took further actions that

have caused substantial, continuing, and irreparable harm and loss to JB Florida

and will continue to do so in the absence of the relief sought herein.

Many of JB Florida's customers have already lost faith in the company as a reliable

as a provider of go-karts and spare parts.  JB Florida is also suffering damage to its

credibility, its goodwill, and its ability to satisfy customer needs.  The only way for

JB Florida to avoid further irreparable damage to its reputation, its goodwill, and

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

its customer relationships is for this Court to enter both a preliminary injunction maintaining the status quo and a mandatory injunction compelling JB Belgium to deliver the Purchased Product to JB Florida.

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

**WHEREFORE,** Plaintiff, JB Kartsport, L.C., requests this Honorable Court to: 1) enter a preliminarily injunction maintaining the status quo as set forth in the Distribution Agreement and enjoining Defendant, during the pendency of this case, from disavowing the terms of the Distribution Agreement; 2) require Defendant to immediately ship the Purchased Product to JB Florida so that JB Florida can meet its customer's orders and timely deliveries thereof; 3) grant an immediate hearing on this Motion and an expedited briefing schedule; and 4) for any and all other relief this Court deems just and proper.

Dated this 27th day of June, 2002

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Plaintiff
One East Broward Boulevard
Suite 1300
Fort Lauderdale, FL  33301
Tel: (954) 525-1000, ext. 73563
Fax: (954) 463-2030
mlefere@hklaw.com
tfcarmic@hklaw.com
eshultz@hklaw.com

By: _____
    Marie Lefere
    Florida Bar No. 386354
    Tamara Carmichael
    Florida Bar No. 963770
    Erica S. Shultz
    Florida Bar No. 0514489

NYC1 #478417 v3

14