# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case Number: 02-80565-CIV-HURLEY/Lynch

JB Kartsport, L.C.,

     Plaintiff/counter-defendant,

vs.

Joost Boxoen Kartsport
BVBA n/k/a JB Kart Sport
NV, a Belgium corporation,

     Defendant/counter-plaintiff.

v.

FKP-U.S., INC. and PETER BEKKERS,

     Third-party defendants.

_____/

**NIGHT BOX**
**FILED**

**NOV 20 2002**

**CLERK, USDC / SDFL / WPB**

### EMERGENCY MOTION BY JB KARTSPORT, L.C. FOR TEMPORARY INJUNCTION AND FOR AN ORDER TO SHOW CAUSE WHY JB KART SPORT NV SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR ITS VIOLATION OF THIS COURT'S ORDER, AND FOR LEAVE TO SUBMIT EVIDENCE WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff, J.B. Kartsport, L.C. ("JB Florida"), through its counsel, and pursuant to 18 U.S.C. section 401 moves this Court for Temporary Injunction, And For An Order To Show Cause Why Joost Boxoen Kartsport BVBA n/k/a JB Kart Sport NV ("JB Belgium") Should Not Be Held in Contempt of Court for Its Violation of This Court's Order, and For Leave to Submit Evidence. Additionally, JB Belgium moves for sanctions, and its attorneys' fees incurred in preparing and arguing this Motion.

Case Number:  02-80565-CIV-HURLEY
Magistrate Judge Lynch

In support, JB Florida states:

## I.   <u>Introduction</u>

In what can only be described as an incredible turn of events, JB Belgium has taken specific actions that violate the terms of the distribution agreement between the parties and the injunction issued by this Court, requiring the parties to abide by the agreement and maintain the status quo.   Just last week, JB Belgium sought emergency relief to enable it to attend a trade show where JB Karts would be marketed for sale by JB Florida.  The emergency nature of JB Belgium's motion was denied by Judge Lynch, presumably because JB Florida certified under penalty of perjury that it would promote and market JB Karts at the trade show consistent with its past practices and obligations, and as required by this Court's injunction. Notwithstanding the terms of the injunction requiring the parties to adhere to the terms of their agreement, and obviously disgruntled by the denial of emergency relief, JB Belgium is now disavowing the literal wording, spirit, and intent of the injunction by attending the trade show in its own capacity purportedly to market JB Karts without JB Florida's input or involvement.  Such conduct directly violates the parties' agreement and brazenly defies the Court's order; therefore this Court should issue a temporary injunction, specifically prohibiting JB Belgium from marketing or selling JB Karts at the trade show.  Additionally, this Court should enter an order to show cause why JB Belgium should not be held in contempt for its actions.

Case Number:  02-80565-CIV-HURLEY
Magistrate Judge Lynch

## II.   Statement of Facts

1.      JB Florida brought suit against JB Belgium and alleged, *inter alia*, claims for breach of an exclusive distributorship agreement, breach of implied duty of good faith and fair dealing, tortious interference, misappropriation of customer lists and conversion (the "Litigation").

2.      JB Florida's claims in the Litigation arose out of JB Belgium's breach of the parties' exclusive distributorship agreement (the "Agreement"), pursuant to which JB Florida was to be the exclusive distributor of JB Belgium's karts in the United States (through August 2009).  A copy of the Agreement is attached hereto as Exhibit 1.  The Agreement thereby precludes JB Belgium from distributing JB Karts into the United States through any entity (including itself) other than JB Florida.

3.      On July 10, 2002, this Court entered an Order Granting JB Florida's Emergency Motion for Preliminary Injunction (the "July 10th Injunction").[1]  A copy of the July 10th Injunction is attached hereto as Exhibit 2.  (DE 12).

4.      The July 10th Injunction directed the parties to continue to conduct business pursuant to the Agreement during the pendency of this case.  It states, in relevant part:  "The status quo, as set forth in the Agreement, shall be honored during the pendency of this litigation. . ." Exhibit 1, ¶ 8.

---

[1] The court also entered an order on November 13, 2002, affirming the obligation of both parties to abide by the terms of the July 10th Injunction and underlying Agreement (the "November 13th Order").  The November 13th Order specifically states that the Injunction requires both sides to comply with the Agreement.  (DE 46).

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

5.     JB Florida is currently in Orlando, Florida, attending the International Association of Amusement Parks and Attractions Convention (the "Tradeshow") which runs from Wednesday, November 20 through Saturday November 23, 2002. *See Decl. of Peter Bekkers* prepared on November 20, 2002, ¶ 11.[2] JB Florida has attended the Tradeshow for the past several years in its capacity as the exclusive distributor of JB Karts, go-karts manufactured by JB Belgium and distributed in the United States exclusively by JB Florida. *Bekkers Decl. II*, ¶ 11.   The Tradeshow attracts many existing and potential go-kart customers, and serves as a major outlet for JB Florida to market JB Karts. *Bekkers Decl II.*, ¶ 11.   Prior to the tradeshow and in anticipation of attendance at the tradeshow, JB Florida requested information from JB Belgium regarding the new composite chassis kart, a new product being launched. *Bekkers Decl II.*, ¶ 11. JB Florida's request to JB Belgium was refused or ignored.   Subsequently, follow-up requests made to JB Florida's counsel to JB Belgium's counsel were also refused or ignored.   JB Florida had intended to promote the new chassis karts at the Tradeshow. *Bekkers Decl. II*, ¶ 11.

6.     JB Florida is currently at the Tradeshow and is providing information

_____

[2] The Bekkers Declaration prepared on November 20, 2002 will hereinafter be referred to as *Bekkers Decl. II* so as not to confuse it with the Declaration submitted in support of JB Florida's Response to JB Belgium's Emergency Motion to Dissolve Plaintiff's Injunction.   Additionally, although the Bekkers Declaration is unsigned because Bekkers is currently at the Tradeshow in Orlando, Florida, Bekkers has approved of the contents therein and will submit a signed Declaration by tomorrow, November 21, 2002.

and answering inquiries of customers and potential customers concerning the purchase of JB Karts. *Bekkers Decl.*, ¶ 12.   More specifically, JB Florida is displaying: a large backdrop with a picture of a JB Kart, company-approved brochures, JB Kart website references, a demo kart with a JB Karts website, and JB Belgium folders with information about JB Karts.[3]  *Bekkers Decl.*, ¶ 12.   JB Florida's activities in this regard conform with the July 10th Injunction, and are consistent with its past practices of attending the Tradeshow for purposes of marketing JB Karts.

7.    On the morning of Tuesday, November 19, 2002, JB Florida witnessed JB Belgium preparing a booth at the Tradeshow. *Bekkers Decl. II*, ¶ 12.   On Tuesday, the tradeshow booth-holders arrived at the Tradeshow hall to set up their booths. *Bekkers Decl. II*, ¶ 12.   JB Florida observed that Karting Concepts Company ("KCC") (a company owned in whole or in part by Joost Boxoen) was displaying JB Belgium/Kartsport materials. *Bekkers Decl. II*, ¶ 12.   After JB Florida initially raised the issue, the materials were removed from KCC's booth. *Bekkers Decl. II*, ¶ 12.

8.    The following day, Wednesday, November 20, 2002 (the date of filing this emergency motion), JB Florida witnessed a full booth displaying: a backdrop displaying the JB Belgium logo, a banner displaying the JB Belgium logo, brochures

---

[3] JB Florida had a number of additional promotional documents at its booth which mysteriously disappeared the night or early morning before the tradeshow began.

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

detailing the features of JB Karts, and a demo of the new composite chassis kart displaying the JB Belgium logo. *Bekkers Decl. II*, ¶ 13. The booth was and is being attended by Joost Boxoen and other JB Belgium representatives. *Bekkers Decl. II*, ¶ 13.

9.     JB Florida has already been approached by at least one potential customer who expressed confusion regarding the fact that two separate companies (JB Belgium and JB Florida) are marketing the same product, JB Karts. *See Bekkers Decl. II*, ¶ 14.

10.     Upon information and belief, JB Belgium is discussing the features and prices for JB Karts with potential customers attending the Tradeshow. *Bekkers Decl. II*, ¶ 15. Along these lines, JB Belgium is advertising JB Karts at prices much below those advertised and used by JB Florida. *Bekkers Decl. II*, ¶ 15.

11.     Upon information and belief, JB Belgium is advising potential customers that, although it cannot sell directly to the customer while in the United States, it can sell JB Karts directly from the factory as long as the customer presents him/herself as a European purchaser. *Bekkers Decl. II*, ¶ 16.

12.     In communicating with customers and potential customers, JB Belgium did not mention that JB Florida is the exclusive distributor of JB Karts in the United States. *Bekkers Decl. II*, ¶ 17. Along these lines, JB Florida has received no referrals from JB Belgium since the Tradeshow began for the sale of JB

– 6 –

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

Karts. *Bekkers Decl. II*, ¶ 17.

13.    JB Belgium is displaying information and a demo of its new composite chassis karts, information which it has consistently refused to provide to JB Florida. *Bekkers Decl. II*, ¶ 18. *See* ¶ 5 above.

14.    JB Belgium is distributing a questionnaire flyer which asks potential customers to provide identifying information so that JB Belgium may send the customer its 2003 catalog. *Bekkers Decl. II*, ¶ 19.

15.    JB Belgium's latest actions are damaging JB Florida's reputation and goodwill by the minute. *Bekkers Decl. II*, ¶ 20.    JB Belgium is in contact with customers and potential customers at the Tradeshow and directly or indirectly conducting itself as a supplier of JB Karts. *Bekkers Decl. II*, ¶ 20.    JB Belgium is attempting to undersell JB Florida for the price of JB Karts. *Bekkers Decl. II*, ¶ 20.

16.    These actions directly and indirectly contravene the Agreement and the July 10th Injunction.  Specifically, Paragraph 1 of the Agreement provides that:

> Company [JB Belgium] further promises not to appoint any other person or entity in the Territory nor to expressly grant any other person or entity the right to sell within the Territory.  Company further promises ***not to establish any company-owned facilities*** for distribution of these products within the Territory ***nor to actively solicit accounts*** within the Territory without the written consent of JBS [JB Florida].

(Emphasis added).  By appearing independently at the Tradeshow, JB Belgium is affirmatively soliciting accounts within JB Florida's exclusive territory, and is in

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

effect taking the first steps toward establishing a "facility" to distribute JB Karts.

17.   Incredibly, JB Belgium conducts itself with full knowledge that its conduct violates the terms of the Agreement and the July 10th Injunction.  Indeed, in JB Belgium's Motion to Dissolve Plaintiff's Injunction filed on November 8, 2002 (DE 42 and 43), JB Belgium admits that it could not promote its products at the Tradeshow because of the July 10th Injunction.  In that regard, JB Belgium's Emergency Motion to Dissolve Plaintiff's Injunction reads as follows:

> JB Belgium has suffered and will continue to suffer actual, immediate, and irreparable harm as a result of the issuance of the preliminary injunction, in that despite the fact that JB Florida has stopped acting as an exclusive distributor for JB Belgium, JB Belgium cannot promote its own products in the United States or communicate with its customers to resolve the many complaints, but must instead rely on JB Florida as its sole United States representative.
>
> ...
>
> Emergency relief is sought in this instance because [sic] JB Belgium plans to attend the International Association of Amusement Parks and Attractions (IAAPA) Convention on November 20-23, 2002, in Orlando, Florida. ***Without dissolution of the injunction, JB Belgium will not be able to (a) effectively market its products at this large gathering of target customers, (b) mitigate the damage caused by JB Florida's repeated breaches of the agreement, and (c) prevent future harm and erosion of its U.S. market position caused by JB Florida's breaches.***

(Emphasis added).

- 8 -

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

18.    Notwithstanding the knowledge that it could not promote JB Karts at the Tradeshow, JB Belgium set up a booth at the Tradeshow for purposes of marketing and promoting JB Karts.

19.    If JB Belgium is allowed to continue marketing JB Karts at the Tradeshow this week, it will continue to cause irreparable damage to JB Florida's present and potential customer relationships and goodwill.  This damage is even more extreme in light of the fact that this latest infraction comes on the heels of JB Belgium's earlier tortious conduct, including its unilateral termination of the Agreement and notices to JB Florida's customers of the termination.  Accordingly, this Court should enter a temporary injunction prohibiting JB Belgium from marketing and promoting JB Karts at the Tradeshow or otherwise marketing its products in any way in the United States, as well as issue an order to show cause why JB Belgium should not be held in contempt of court.

### III.    Memorandum Of Law

**A.    This Court should enter a temporary injunction prohibiting JB Belgium from continuing to market and sell JB Karts at the Tradeshow**

By entering the July 10th Injunction, this Court has already ordered the parties to abide by the terms of the Agreement during this litigation.  After awarding preliminary relief, this Court retained the right to enforce its order through its equitable powers.  See American Mining Congress v. U.S. Army Corps of Engineers,

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

120 F. Supp. 2d 23, 27 (D.D.C. 2000) (stating that, "[a] district court retains jurisdiction to enforce the terms of a previously entered injunction"). It must now use those powers to order JB Belgium to cease violating the July 10th Injunction.

Moreover, when a manufacturer violates an exclusive distribution agreement, injunctive relief is appropriate. See K Mart Corp. v. Cartier, Inc., 108 S.Ct. 950, 957 (1988) (explaining that a distributor may invoke injunctive relief to enforce a right that exists under an exclusive distribution agreement). The court has the discretion to enjoin the manufacturer from selling or interfering with the distributor's exclusive right to sell the product pursuant to the distribution agreement. See Lea v. Vasco Products, Inc., 81 F.2d 1011, 1012 (5th Cir. 1936). See also Gerard v. Almouli, 746 F.2d 936, 939 (2d Cir. 1984) (upholding a preliminary injunction preventing the defendants from selling, distributing, pricing to, or doing business with anyone other than the plaintiffs, pursuant to the exclusive distribution agreement).

JB Florida is entitled to a temporary injunction specifically enjoining JB Belgium from independently (or with the assistance of any entity not related to JB Florida) marketing or selling JB Karts at the tradeshow. In the case of Robi Ltd. v. Prokosch, No. 99 CIV . 1924 (DLC), 2000 WL 191684, at * 1 (S.D.N.Y. Feb. 10, 2000), the background facts demonstrated that injunctive relief is appropriate to prevent one party from violating the exclusivity provision of an exclusive distributorship by marketing and selling at a tradeshow.

- 10 -

The circumstances here warrant a temporary injunction because JB Florida is likely to succeed on the merits of this cause, JB Florida would suffer irreparable harm if the injunctive relief is not granted, the harm to JB Florida far exceeds any potential harm to JB Belgium, and the injunction would not be inconsistent with public interest. See Lloyd Citrus Trucking, Inc. v. Treesweet Products, Inc., 655 F. Supp. 385, 387 (S.D. Fla. 1987) (specifying the four elements of obtaining a temporary injunction)(citing United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983)).

**1.    JB Florida is likely to prevail on the merits**

By selling and marketing JB Karts at the Tradeshow, JB Belgium has blatantly violated the Agreement which grants JB Florida the exclusive right to sell and market JB Karts in the United States.  JB Belgium cannot independently sell its products, in violation of the exclusive distribution agreement, simply because it claims to be dissatisfied with the way JB Florida is doing business.   See Cramer Products, Inc. v. Int'l Comfort Products, Ltd., 1991 WL 68892, at * 1, 6 (10th Cir. 1991) (upholding a preliminary injunction granted to plaintiffs after defendant, dissatisfied with plaintiff's marketing strategies, sold its goods to another distributor, in violation of the exclusive distribution agreement).  Moreover, even if JB Belgium's appearance at the Convention constitutes only indirect contact or solicitation, such indirect contact still  violates the exclusive distribution agreement. See Guidant Sales Corp. v.

Pacemakers, Inc. , No. CIV. 01-1772DWFAJB, 2001 WL 1636502 at * 7 (D. Minn. Oct. 18, 2001).

Not only is JB Florida's claim for injunctive relief legally sound, it is  factually convincing as well.   JB Belgium recognized in its Emergency Motion to Dissolve Plaintiff's Injunction that it was not entitled to promote JB Karts at the Tradeshow, "[w]ithout dissolution of the injunction."  JB Belgium is fully aware that its activities violate the July 10th Injunction.  Of equal importance, JB Belgium's conduct directly contravenes the language of the Agreement precluding it from soliciting accounts.  See ¶ 1, Exhibit 2.  When these facts are considered in conjunction with the case law holding that disregard of an exclusive distributorship forms a right to injunctive relief, it becomes clear that JB Florida's claim is not only likely, but virtually certain, to succeed.

**2.     JB Florida would undoubtedly suffer extreme irreparable harm if the requested relief is not granted**

JB Florida is and will continue to suffer irreparable harm if this injunctive relief is not granted because JB Belgium has and continues to come into contact with, and market to, many customers and potential customers at the Tradeshow. See Grant v. Robert Half Int'l, Inc., 597 So. 2d 801, 801-02 (Fla. 3d DCA 1992) (holding that the element of irreparable harm is satisfied under Florida law whenever a contracting party's activities have caused injury to a company's goodwill and damage to its reputation); See Am. Hosp. Supply Corp. v. Hosp. Products Ltd.,

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

780 F.2d 589, 611 (7th Cir. 1980) (appendix) (citations omitted) (holding that when a party is unable to calculate the enormous negative impact that another party's misconduct causes to its profits, reputation, and goodwill, that party is deprived of an adequate remedy at law).

Specifically, it is practically impossible to quantify the number of customers and potential customers that JB Florida will lose as a result of JB Belgium's marketing and promotion of JB Karts at the Tradeshow.  This problem is further compounded by the fact that JB Belgium is marketing in the same immediate venue as JB Florida.  It is difficult to quantify the goodwill that JB Florida will lose when its customers and potential customers see the manufacturer of JB Karts – JB Belgium – competing with JB Florida at the Tradeshow.  This is particularly true where only the manufacturer has updated product information (i.e., the composite chassis karts) which was denied to JB Florida.  JB Belgium's actions are harming JB Florida's goodwill and causing confusion about exactly who is the authorized distributor of JB Karts in the United States (especially in light of the notices of termination that many received from JB Belgium at the time that it terminated the Agreement). Moreover, contact with customers and refusal to provide product information deprives JB Florida of its contractual rights to sell JB Karts, and utterly destroy JB Florida's credibility as the exclusive distributor of JB Karts in the United States. JB Florida is losing the opportunity to conduct business with those customers

Case Number:  02-80565-CIV-HURLEY
Magistrate Judge Lynch

because they will already be dealing with JB Belgium.  There can be no doubt that JB Florida would suffer immeasurable and irreparable harm if this Court does not enjoin JB Belgium from continuing to sell JB Karts at the Tradeshow.

### 3. The harm to JB Florida should the court deny injunctive relief greatly exceeds any harm to JB Belgium

The gravity of harm being inflicted upon JB Florida, specifically the impact on its customers, potential customers, reputation, and goodwill has been discussed in depth above.  By contrast, JB Belgium would suffer *no* injury if the injunction were granted while this lawsuit is pending.  Indeed, the requested injunction would only require JB Belgium to do what it is contractually obligated and court-ordered to do.

In analyzing this aspect of the injunction analysis, courts find it useful to factor in the significance of the first factor, that is, the likelihood that the movant would succeed on the merits.  Shell Oil Co. v. Altina Associates, Inc., 866 F. Supp. 536, 542 (M.D. Fla. 1994).  In other words, where the movant is likely to succeed (and thus prove that the non-movant's conduct was wrongful), the continuing harm that the movant is likely to experience outweighs any potential injury to the non-movant.  Id.

As demonstrated above, JB Florida is likely to succeed on the merits of its claims because JB Belgium has all but admitted in its Emergency Motion to Dissolve Plaintiff's Injunction that it is not entitled to sell JB Karts under the July 10th Injunction.  However, even without the benefit of the added presumption, JB Florida presently suffers far greater harm than JB Belgium could possibly endure should a

- 14 -

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

temporary injunction not be issued because JB Florida will suffer incalculable damages in terms of lost profits, and harm to its goodwill, business reputation, and customer relationships.   In contrast, a temporary injunction would not harm JB Belgium; it would merely require it to perform under the Agreement until its Motion to Dissolve is heard by this Court.

Under any analysis, the harm being imposed on JB Florida in the face of JB Belgium's marketing and sale of JB Karts at the Tradeshow entirely outweighs any effect that JB Belgium might endure as a result of the injunction being granted.

### 4.    The public interest would be furthered by a temporary injunction

There is no question that granting the injunction will *further* the public interest.   Simply put, the public interest is *not* served by allowing JB Belgium to blatantly breach the Agreement and flagrantly disregard this Court's July 10th Injunction.   See Burger King Corp. v. Lee, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991) (stating that the public interest is not furthered when a party in breach is allowed to continue to irreparably harm his opponent and to extensively damage a party's goodwill and reputation).   Here, by appearing at the Tradeshow and selling JB Karts, JB Belgium continues to unfairly interfere with the customer relationships JB Florida has spent years building.   The facts here provide a more than adequate setting for this Court to exercise its powers of equity to enjoin future harm by precluding JB Belgium from marketing JB Karts at the Tradeshow.

- 15 -

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

**B.    JB Belgium should be held in contempt for violating the terms of the Injunction and underlying Agreement**

This Court should hold JB Belgium in contempt of court for violating the July 10th Injunction and the Agreement. This court can hold JB Belgium in contempt for violating the July 10th Injunction which required it to abide by the terms of an exclusive distributorship. See N.A. Sales Co., Inc. v. Chapman Indus. Corp., 736 F.2d 854, 857-858 (2d Cir. 1984) (upholding a finding of contempt when the defendants violated a permanent injunction preventing them from violating an exclusive distributorship agreement).

One who disobeys a valid court order subjects himself to an action for contempt. In Re Shore, 193 B.R. 598, 601 (S.D. Fla. 1996), S.E.C. v. Randolph, 736 F.2d 525, 528 (9th Cir. 1984). If the Court finds that the conduct alleged violates its July 10th Injunction, it should enter an order requiring the defendant to show cause why it should not be held in contempt and conduct a hearing on the matter. Mercer v. Mitchell, 908 F.2d 763, 768 (11th Cir. 1990). A finding of civil contempt may be coercive, which is intended to make the defendant comply, or compensatory, which requires the defendant to reimburse the injured party for losses and expenses because of the noncompliance. Richard v. Auto Publisher, Inc., 735 F.2d 450, 458 (11th Cir. 1984).

Here, JB Belgium was ordered in the July 10th Injunction to abide by the terms of the Agreement. Despite this Court's clear mandate, JB Belgium has

– 16 –

willfully ignored that language and attempted to compete with JB Florida by having contact with customers and potential customers at the Tradeshow.

When a party willfully violates a court order, the court should impose a stiff remedy to ensure future compliance, including additional injunctive relief.  See Chapman Indus., 736 F.2d at 857-858; Zivitz v. Greenberg, No. 98 C 5350, 2000 U.S. Dist. LEXIS 7842, at *5 (N.D. Ill. June 5, 2000) (indicating that a stiff remedy is required when a party is in noncompliance with a court order); See Gregory v. Depte, 896 F.2d 31, 33-34 (3d Cir. 1990) (holding that the lower court's imposition of an independent injunction as part of a contempt sanction was not an abuse of discretion).  For instance, in Chapman Indus., the court awarded treble damages to the plaintiff after the defendant violated a permanent injunction by continuing to sell its product to a different retailer, in violation of the exclusive distribution agreement.  736 F.2d at 856-858.   The Second Circuit upheld the award, explaining that, "in light of Chapman's continuous and obviously willful violation of Judge Mishler's orders, he had ample reason to conclude that only a stiff remedy would suffice to coerce compliance."  Id. at 857-858.  Similarly, JB Belgium has willfully and blatantly failed to adhere to the July 10th Injunction.

Indeed, JB Belgium has already filed an emergency motion for dissolution based upon its desire to attend the Tradeshow.  In response, JB Florida submitted evidence that it was marketing JB Karts at the Tradeshow.  Despite denial of the

Case Number: 02-80565-CIV-HURLEY
Magistrate Judge Lynch

emergency relief, and despite JB Florida's evidence, JB Belgium ignored these facts, and when it failed to get immediate results from its baseless motion, took matters into its own hands, and openly violated the July 10th Injunction by marketing JB Karts at the Tradeshow.

JB Belgium has failed to show any good faith attempt to comply with the July 10th Injunction, first attempting to avoid the effect of the exclusive distributorship by requesting dissolution of the injunction, and then by selling JB Karts at the Tradeshow. JB Belgium's actions fly in the face of this Court's July 10th Injunction. This Court should award a temporary injunction prohibiting JB Belgium from continuing to violate or frustrate the spirit and intent of the July 10th Injunction. Additionally, this Court should find JB Belgium in contempt of court. Finally, this Court should award JB Belgium costs, attorney's fees, damages and sanctions due to JB Belgium's acts, the amount of which may be determined subsequent to a finding of contempt. <u>Zivitz</u>, *supra* at *10.[4]

**WHEREFORE**, Plaintiff, JB Florida requests that this Court enter a temporary injunction precluding JB Belgium from independently (or with the assistance of any entity not related to JB Florida) marketing JB Karts at the Tradeshow; enter an Order to Show Cause why JB Belgium should not be held in Contempt of Court; grant JB Florida leave to submit evidence; find JB Belgium in

---

[4] JB Florida intends to supplement this Emergency Motion with additional evidence as events transpire.

Case Number:  02-80565-CIV-HURLEY
Magistrate Judge Lynch

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was

sent via facsimile and US Mail to George C. Gaskin, Esq., McKenna Long &

Aldridge, LLP, 303 Peachtree Street, NE, Suite 5300, Atlanta, GA 30308, US

corporate counsel for Defendant and Michael Easley, Esq., Jones Foster et al., 505

South Flagler Drive, Suite 1100, West Palm Beach, Florida 33401, Local Counsel for

Defendant, this 21st day of November, 2002.

By: _____
Richard C. Hutchison
Florida Bar No. 709360
Tamara Carmichael
Florida Bar No. 963770
Erica S. Shultz
Florida Bar No. 0514489

FTL1 #610042 v4

– 20 –

Case Number:  02-80565-CIV-HURLEY
Magistrate Judge Lynch

contempt of Court, and/or award JB Belgium all other relief set forth herein and/or

that this Court deems just and proper.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Plaintiff
One East Broward Boulevard,
Suite 1300
Fort Lauderdale, FL  33301
Tel: (954) 525-1000, ext. 73563
Fax: (954) 463-2030
rhutch@hklaw.com
tfcarmic@hklaw.com
eshultz@hklaw.com

By: _____
    Richard C. Hutchison
    Florida Bar No. 709360
    Tamara Carmichael
    Florida Bar No. 963770
    Erica S. Shultz
    Florida Bar No. 0514489

- 19 -

### Distribution Agreement

This Distribution Agreement (the "Agreement") is entered into as of this 9th day of August, 1999 by and between Joost Boxoen Kartsport BVBA., a company organized under the laws of Belgium (the"Company") and JB Kart Sport, L.C., a Florida Limited Liability Company ("JBS").

**WHEREAS**, the Company is in the business of manufacturing indoor karts and related parts (together referred to herein as "Products") under the tradename JB Karts; and

**WHEREAS**, the Company desires to establish JBS as its exclusive distributor for its products in the territory described below and upon the terms contained herein;

**NOW THEREFORE**, in consideration of the mutual representations, warranties, covenants and agreements contained herein, and upon the terms and subject to the conditions hereinafter set forth, the parties do hereby agree as follows:

1.    **APPOINTMENT AS EXCLUSIVE AGENT**. The Company hereby grants JBS the exclusive right to sell the Company's Products listed on *Schedule A* attached hereto in the United States (the "Territory"). Company further promises not to appoint any other person or entity in the Territory nor to expressly grant any other person or entity the right to sell within the Territory. Company further promises not to establish any company-owned facilities for distribution of these products within the Territory nor to actively solicit accounts within the Territory without the written consent of JBS. Company further promises to refer all inquiries about the Company's products from within the Territory to JBS.

2.    **TERM**. The term of this Agreement shall be for a period of ten (10) years from the date hereof, subject to extension upon the mutual agreement of the parties.

3.    **PRICING**. JBS shall purchase the Products at a 15% discount from the Company's MSRP price list, a copy of which is attached hereto as *Schedule A*. In turn, JBS shall sell the Products to customers in accordance with the price list set forth in *Schedule A* attached hereto

4.    **ORDERING AND PAYMENT**. JBS shall provide the Company with an order for production of karts and parts at least eight (8) weeks prior to the desired delivery date. All orders shall be approved by the Company, which approval shall not be unreasonably withheld. With respect to karts, JBS shall prepay 50% of the purchase price on all karts at the time JBS places an order with the Company. Karts shall not be shipped by the Company until either (i) it receives proof of a bank check via facsimile or (ii) it has actual receipt of the payment of the balance due. With respect to parts, payment for orders less than 500000 BEF shall be due within five (5) business days of receipt by the customer. Payment for orders in excess of 500000 BEF shall made in accordance with the same procedures as are in effect for Karts. The payment procedures set forth herein shall only be changed with the written agreement of both parties.



EXHIBIT
_____ 1

5.     **DELIVERY**.   All transportation and insurance costs to the nearest point of entry via ocean freight will be shared and paid for equally by the Company and JBS.  All final transportation costs for the nearest point of entry to the customers location, including but not limited to, applicable duties and taxes shall be paid by JBS.  The cost of any airfreight, if applicable, shall be paid by the JBS.  JBS has the right to pass through any cost of transportation directly to the customer.  The Company shall have the right to delay delivery in the event that payment in accordance with Paragraph 4 hereof is not received on a timely basis.  Furthermore, the Company has the right to charge storage fees in the event that payment in accordance with Paragraph 4 hereof is not received on a timely basis.  JBS will have the right to pass through any such fees to its customer.

6.     **INVENTORY**.  When positive cash flow allows for the inventory of Product in the U.S., the parties shall agree upon a mutually acceptable arrangement.  JBS shall furnish the Company with a monthly statement in a form mutually agreed upon by the parties no later than the fifteenth day of each succeeding month   JBS shall also furnish the Company with such additional information that the Company reasonably requests on a prompt basis.

7.     **RENEWALS**.  This agreement shall not be renewed automatically, but the parties may renew the agreement upon execution of a new agreement, upon such terms which both parties feel are mutually beneficial.

8.     **MISCELLANEOUS**.

(a)     Attorneys' Fees.     If any party shall be compelled to enforce this Agreement, whether or not through litigation, the prevailing party shall be entitled to receive reasonable attorneys' fees and all costs incurred in connection with such enforcement, including fees and costs of appeal.

(b)     Further Cooperation.  From and after the date of this Agreement, each of the parties hereto agrees to execute whatever additional documentation or instruments as are necessary to carry out the intent and purposes of this Agreement.

(c)     Waiver.  No waiver of any provision of this Agreement shall be valid unless in writing and signed by the person against whom it is sought to be enforced.  The failure of any party at any time to insist upon strict performance of any condition, promise, agreement or understanding set forth herein shall be not construed as a waiver or relinquishment of the right to insist upon strict performance of the same condition, promise, agreement or understanding at a future time.

(d)     Governing Law; Construction.  It is the intention of the parties to this Agreement that the laws of the State of Florida shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties.  The parties agree and acknowledge that each party has reviewed this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting parties shall not be employed in the interpretation of this Agreement or any amendment or exhibits hereto.

(e)   Entire Agreement.  This Agreement sets for the entire understanding of the parties, and this Agreement may not be modified, altered, or changed in any way except by a written document signed by all the parties hereto or their respective permitted successors hereunder.

(f)   Severability.  The invalidity or unenforceability of any particular provision of this Agreement shall not effect the other provisions hereof and this Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

(g)   Binding Effect.  This Agreement shall be binding upon and shall operate for the benefit of the parties hereto and their respective permitted successors, assigns, personal representatives, beneficiaries and distributees.

(i)   Counterparts.  This Agreement may be executed in any number of counterparts, and each such counterpart shall for all purposes be deemed to be an original.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written.

JOOST BOXOEN KARTSPORT, BVBA

By:
Name:
Title: President

JB KART SPORT, L.C.

By:
Name: PETER BEKKERS
Title: PRESIDENT

**SCHEDULE A**

Prijslijst karts, options, parts inclusief:

Inkoop     BEF        -10%
MSRP Europe BEF
Veroop     USD.

Als dit O.k. bevonden is origineel tekenen en terugsturen.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case Number: 02-80565-CIV-(MIDDLEBROOKS/JOHNSON)

JB Kartsport, L.C.,

      Plaintiff,

vs.

Joost Boxoen Kartsport
BVBA n/k/a JB Kart Sport
NV, a Belgium corporation,
_____/

FILED by ___ D.C.

JUL 10 2002

CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## AGREED ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

      **THIS CAUSE,** having come before this Court upon the Emergency Motion for Entry of a Preliminary Injunction and Memorandum of Law filed in support thereof, and the Court having reviewed the record and otherwise being duly informed it is hereby found and ordered as follows:

### I.    FINDINGS OF FACT

    1.    During 1998, JB Florida began, with JB Belgium's consent, to act as JB Belgium's exclusive distributor pursuant to an oral agreement. Subsequently, on or about August 11, 1999, JB Florida and JB Belgium entered into a written exclusive distribution agreement (the "Agreement"). A copy of the Agreement is attached as Exhibit 1 to the Verified Complaint and Mr. Bekkers Affidavit.

    2.    Pursuant to the Agreement, JB Florida has the exclusive right to distribute JB Belgium's products in the United States for a specified period of ten

**EXHIBIT**

**2**

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

(10) years (through August 10, 2009). See paragraph 2 of Exhibit 1. Verified Am.

Compl., ¶ 7; Bekkers Aff., ¶ 7.

3.     The Agreement also provides, *inter alia*, that JB Belgium shall not: (a)
grant any other person or entity the right to sell within the United States; (b)
establish any company-owned facilities for distribution in the United States; and (c)
actively solicit accounts in the United States without JB Florida's written consent.

4.     On or about June 13, 2002, JB Belgium sent a formal "notification that
JB Kart Sport NV ("JBK NV") is terminating the distribution arrangement
currently in effect between JBK NV and J.B. Kartsport, L.C. ("Kartsport"), effective
immediately.   Upon your receipt of this letter, Kartsport shall no longer be
permitted to sell or distribute any products, spare parts or accessories
manufactured by JBK NV or sold by JBK NV to Kartsport." A copy of the notice is
attached as Exhibit 2 to the Verified Complaint and the Bekkers Affidavit. Verified
Am. Compl., ¶ 11; Bekkers Aff., ¶ 11. JB Belgium then contacted customers directly
via telephone and in writing.  JB Belgium has notified customers (orally and in
writing) that JB Florida was no longer JB Belgium's distributor and directed
customers to begin making any future purchases through JB Belgium or another
distributor at its direction.  A copy of the JB Belgium notices and press release to
JB Florida's customers, sent via e-mail and fax, are attached as Composite Exhibit
3 to the Verified Complaint and the Bekkers Affidavit.

2

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

5.      JB Florida also has outstanding orders for manufacture of karts for certain of its customers.  Specifically, the following three outstanding orders are complete and ready for shipment from JB Belgium to JB Florida, and JB Florida still owes to JB Belgium the following amounts:

a.      Sales Order No. VD02-0967 for G-Force Karts, LLC of Richmond, Virginia (25,089.8700 EURO owed to JB Belgium);

b.      Sales Order No. VD02-1145 for Kart King of Enumclaw, Washington (19,023.53 EURO owed to JB Belgium) ; and

c.      Sales Order No. VD02-0949 for Go Kart Indoor of Maple Grove, Minnesota (22,992.81 EURO owed to JB Belgium) (these three orders are collectively, the "Additional Orders");

## II.    CONCLUSIONS OF LAW

6.      This Court finds that JB Florida has demonstrated that it is entitled to the preliminary relief set forth below.

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED:**

7.      Plaintiff's Emergency Motion is Granted.

8.      The status quo, as set forth in the Agreement, shall be honored during the pendency of this litigation, including, but not limited to the fact that JB Belgium is enjoined from:

a)      appointing any other person or entity the right to sell within the United States;

3

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

b)     establishing any company-owned facilities for distribution of JB

Belgium's products; and

c)     soliciting accounts within the Territory without JB Florida's

permission or otherwise contacting JB Florida's customers.

9.      JB Belgium shall, on or before noon (e.s.t.) on Wednesday, July 10,

2002, provide to JB Florida for distribution to its customers a signed letter on JB

Belgium's letterhead that states: "JB Kartsport, L.C. is, until further notice, the

exclusive distributor of JB Kartsport, N.V.'s products in the United States. Please

submit all inquiries and orders to Mr. Peter Bekkers of JB Kartsport."

10.      JB Belgium shall, on or before 5:00 pm (e.s.t.) on Thursday, July 11,

2002, provide all information regarding any United States orders, inquiries, and

sales made to or by JB Belgium or its agent for JB Belgium karts and parts. Such

orders, inquiries, and sales will be handled by JB Florida pursuant to the

Agreement. During the pendency of this case, any and all orders, inquiries, and

sales (oral or written) shall be directed to JB Florida for handling and response.

11.      On or before noon (e.s.t.) on Thursday, July 11, 2002, JB Belgium shall

re-issue its price list as it existed on June 12, 2002 and shall post this information

on its Website.

12.      On or before noon (e.s.t.) on Thursday, July 11, 2002, JB Belgium shall

correct its Website to reflect the notice in paragraph 11 above and the re-issued

price list as set forth in paragraph 13.

4

Case Number: 02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

13.     The Additional Orders shall be ready for pick-up in Belgium by Fritz on or before noon (Belgium time) on Friday, July 12, 2002. JB Belgium shall pre-pay Fritz for fifty percent (50%) of shipment costs by ocean on or before this time. With respect to the outstanding amounts due and owing on the Additional Orders as set forth above, the monies shall be sent by wire transfer by JB Florida to the escrow agent on or before 5:00 e.s.t. Thursday, July 11, 2002 to be held in escrow by counsel for JB Belgium (in US Dollars). Upon delivery of the respective Additional Orders to JB Florida's customers at their designated address, JB Florida's customer shall have forty-eight hours (48) hours to inspect the Additional Orders.

14.     If no written objection is made to the condition of the Additional Order(s) product or delivery, JB Florida shall instruct the escrow agent in writing to release payment to JB Belgium from escrow and proof of same provided to JB Florida. If written objection is made to any portion of a shipment(s), the pro rata portion of the escrow representing the unobjectionable portion of the shipment shall be directed for release. If written objection is made but such objection is not directly related to JB Belgium's performance, that payment shall be directed for release. If a written objection is made to all or any portion of the shipment, payment for that portion shall not be made by the escrow agent and the parties will seek relief before this Court.

5

Case Number:  02-80565-CIV-MIDDLEBROOKS
Magistrate Judge Johnson

15.   This Court acknowledges that the parties reserve all other rights and remedies available at law or in equity.

**DONE AND ORDERED** in chambers at West Palm Beach, Florida on this _10_ day of July, 2002.

Linneas R. Johnson
United States Magistrate Judge

FTL1 #595889 v2

6