UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 02-80565-CIV-LYNCH

JB KARTSPORT, L.C. AND
PETER BEKKERS,

     Plaintiffs/Counter-Defendants,

v.

JOOST BOXOEN KARTSPORT BVBA
n/k/a JB KART SPORT NV,

     Defendant/Counter-Plaintiff,

v.

FKP-U.S., INC., AND PETER BEKKERS,

     Third-Party Defendants.

_____/



FILED by _____ D.C.

NOV - 5 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA.

## ORDER ON DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CAPACITY TO BRING THE ACTION AND FOR DISSOLUTION (DE 153)

**THIS CAUSE** comes before this Court upon the above referenced Motion. Having reviewed the Motion, its accompanying Concise Statement of Material Facts and Memorandum in Support, the Plaintiffs' Response[1], the parties' supplemental briefs, and the pertinent portions of the record, and having held hearings thereon on August 28 and September 17, 2003, this Court finds as follows:

---

[1] This Court also considers the Plaintiffs' Emergency Notice of Clarification, filed September 2, 2003 after the first hearing, and their Supplemental Memorandum of Law filed September 11, 2003.



BACKGROUND

1.    The Plaintiff, JB Kartsport L.C., ("Kartsport LC")
initially brought suit against the Defendant, JB Kart Sport NV
("JB Belgium"), alleging breach of a distribution agreement and
is now joined by co-Plaintiff, Peter Bekkers. JB Belgium is a
Belgian corporation engaged in the business of manufacturing
indoor go-karts. Kartsport LC is the business entity formed
between it and FKP-U.S., Inc. ("FKP") for the purpose of
developing JB Belgium's presence in the US-marketplace, and to
that end, JB Belgium executed a distribution agreement with
Kartsport LC whereby Kartsport LC would be its exclusive
distributor. The Defendant filed, in turn, an Amended
Counterclaim alleging deadlock within Kartsport LC and seeking
its dissolution and a Third-Party Complaint against Peter Bekkers
and his company, FKP.

2.    Relevant to the issues raised in the instant Motion for
Summary Judgment are three documents regarding the formation of
Kartsport LC. This first is an "Operating Agreement for JB Kart
Sport, L.C.", prepared by Cory Nass, Esq., on behalf of Peter
Bekkers and FKP. The uncompleted preamble states that it:

> is made and entered into as of April ____, 1998 by and among
> JB Kart Sport, L.C. (the "Company"), a Florida Limited
> Liability Company, FKP-USA, Inc., a Florida corporation
> ("FKP"), and JB Kart ("JB"), a company organized under the
> laws of [sic] (FKP and JB are sometimes individually
> referred to herein as a "Member" and collectively as the
> "Members").

Mr. Joost Boxoen, General Manager of JB Belgium, signed (undated) the document on behalf of JB Belgium and the contemplated company, JB Kart Sport, L.C., but no representative of FKP signed it.

3.   The bulk of the Operating Agreement's provisions is standard language for such a contract and uses the general terms of "Member" or "Members" with the notable exception of Article VIII which addresses management matters. There it specifically identifies that FKP is to "manage the day-to-day business operations of the Company on behalf of the Members", and makes reference to a yet to be executed agreement whereby the company would serve as JB Belgium's exclusive distributor. The Agreement then delineates those matters that lie beyond the scope of day-to-day operations and conveys upon members, through the exercise of a majority vote, "overall management and control of all aspects of the business and affairs of the Company". For example, such a "Required Vote" would be necessary for the Company to take this legal action.

4.   On June 2, 1998 Peter Bekkers, on behalf of FKP, and Joost Boxoen, on behalf of JB Belgium, signed a letter ("Letter of Understanding") setting forth the basic terms and conditions pursuant to which they would enter into a business relationship — via a Florida limited liability company under the name of JB Kart Sport — for the purpose of marketing and distributing JB Belgium

products in the United States. JB Belgium and FKP were to own the company equally and were to prepare an agreement outlining their respective rights and obligations as members. Two terms specifically mentioned were that "all material decisions relating to the company shall be unanimously agreed upon by the parties" and that FKP was to be responsible for the day-to-day business operations. The Letter of Understanding also clearly expressed the anticipated preparation of various additional governing agreements.

     5.    The third agreement is the Articles of Organization of J.B. Kartsport, L.C., notarized on June 4, 1998 and filed with the Florida Secretary of State on June 11, 1998. This document was also prepared by Cory Nass, Esq., who was retained by Bekkers to be the corporate attorney for Kartsport LC. Relevant to the instant Motion is Article X which states:

> The Business of this Limited Liability Company shall be managed by one or more managers. Names and addresses of such managers who are to serve as managers until the first annual meeting of members or until their successors are elected and qualified are as follows: Peter Bekkers [of Delray Beach, Fla.].

     7.    The Response contains affidavits from Mr. Nass and Mr. Bekkers, wherein both attest that at the parties' initial meeting to create Kartsport LC, Mr. Bekkers was appointed to the positions of President and manager and it was agreed that he would have full discretion to cause Kartsport LC to take any action that Mr. Bekkers determined to be in its best interest,

including paying taxes, making financial decisions, and pursuing litigation. The Plaintiff, however, does not provide the date of this meeting nor any other surrounding details.

8.   In August 1999 Joost Boxoen, as President of JB Belgium, and Peter Bekkers, as President of Kartsport LC, executed the exclusive distribution agreement ("Distribution Agreement"), the alleged breach of which is the subject of the Plaintiffs' lawsuit.

9.   The above discussed documents refer to Kartsport LC's manager as either FKP or Peter Bekkers. It is undisputed that Mr. Bekkers controls FKP and that he served as the acting manager of Kartsport LC. Where analysis requires, this Court uses FKP and Peter Bekkers interchangeably in referring to Kartsport LC's manager.

<u>DISCUSSION</u>

A movant is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. <u>See</u> Fed. R. Civ. P. 56, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 578 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. <u>See</u> <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144 (1970). Notwithsanding this presumption, the non-moving party must come forward with evidence

to establish each element essential to that party's case sufficient to sustain a jury verdict. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In short, a plaintiff must offer, and not just plead, evidence of a prima facie case. What is more a plaintiff's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. See Fed. R. Civ. P. 56(e), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also, Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993), Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742-43 (11th Cir. 1996). In this way, Rule 56 serves to eliminate the needless delay and expense to the parties and to the Court of an unnecessary trial.

I.   Whether Kartsport LC Has Authority to Bring Suit.

JB Belgium points out that Plaintiff Kartsport LC's membership did not hold a vote to authorize the filing of the instant suit. As it argues in its Motion:

> [t]here is no provision in the articles which authorizes one
> member to sue the other member. There is no evidence of a
> vote of the members. There is no evidence under the articles
> or operating agreements that one member agreed to confer on
> the other member or a managing member the unlimited
> authority to file a complaint on behalf of Kartsport against
> [JB Belgium]. [Kartsport LC] therefore lacks capacity, and
> the case should be dismissed.

The Plaintiff looks to Chapter 608 of the Florida Statutes for its grant of authority. Section 608.422(3), Fla. Stat., authorizes a manager to decide exclusively, i.e., independently of the members, any matter relating to the company's business,

and because the Articles of Organization names Peter Bekkers as
the manager, the Plaintiff reasons that it conveys the same broad
discretion to him.

It is true that the Articles of Organization identifies
Peter Bekkers as the acting manager, but apart from that, it does
not specifically define the scope or breadth of his managerial
powers. By turning to § 608.422(3), Fla. Stat., the Plaintiff
attempts to fill in that gap with the statutory default
provisions. That statute distinguishes a "member-managed" LLC
from a "manager-managed" LLC on the basis of where managerial
responsibility is vested: "[i]f the articles of organization or
the operating agreement provide for the management of the limited
liability company by a manager", then that manager may
exclusively conduct the company's business. This grant is neither
absolute nor pre-ordained, and organizing parties are free to
define on their own terms a manager's powers or otherwise limit
what the statute provides.

The Defendant proffers the Operating Agreement and the
Letter of Understanding as doing just that, and contends that
through them the manager was expressly denied the prerogative to
bring suit on his own accord. In other words, that the manager's
managerial and decision-making authority does not include the
initiation of legal action in the absence of member consent. The
June 2nd Letter of Understanding restricts FKP, i.e, Peter

Bekkers, to managing the company's day-to-day business operations leaving all material decisions to be reached unanimously by the membership. The letter is signed by both parties and predates the Articles of Organization by two days. It demonstrates a clear intent to define the scope of the manager's authority, but so as to give the Plaintiff the benefit of the doubt, it can be said that the letter does not specify whether the bringing of a lawsuit constitutes as a material or day-to-day business matter. (This Court notes that the Plaintiff offers no legal authority showing how the bringing of suit by a company against one of the company's two members can be regarded as a day-to-day business matter.) To answer that question, this Court turns to the third organizational document, the Operating Agreement.

The Operating Agreement provides the most explicit definition of what is day-to-day business operations by defining what it is not. Article VIII, "Management", lists out nine categories of company business that are beyond the manager's scope of duties and therefore require membership vote. Subsection (a) of Article VIII necessitates a "Required Vote" of the members to:

> [p]ay from Company's assets, extend, renew, modify, adjust, submit to arbitration, prosecute, defend or compromise upon such terms as the Members may determine, and upon such evidence as the Members may deem sufficient, any obligation, suit, liability, cause of action or claim, including taxes, either in favor of or against the Company;

The instant lawsuit easily falls within this category. It is

Page 8 of  26

noteworthy that the copy of the Operating Agreement attached to the Defendant's Amended Counterclaim and Third-Party Complaint is only signed by one of the members, Joost Boxoen for JB Belgium, and not by the other member, Peter Bekkers for FKP. At first blush this would call into doubt the Operating Agreement's validity.

This Court finds, however, that any dispute as to its validity is not genuine, and that by not following its terms, the Plaintiff Kartsport LC lacks the authority to bring the instant lawsuit. In its Response, the Plaintiff all but ignores the Operating Agreement, relying instead on the default language of § 608.422(3), Fla. Stat., and the affidavits of Peter Bekkers and Cory Nass, Esq. Both affidavits say basically the same thing: that at the initial meeting to organize Kartsport LC, all the parties were in attendance and "it was agreed that Peter Bekkers would have full discretion to cause Plaintiff [Kartsport LC] to take any action that Peter Bekkers determined to be in the best interests of [the company], including but not limited to paying taxes, obtaining financing, making financial decisions and pursuing litigation on behalf of Plaintiff [Kartsport LC]." Thus, the attorney hired to prepare all the organizational documents is now asserting through parol evidence that some contrary understanding was reached.

The Plaintiff does not deny the existence of the Operating

Agreement, but instead minimized its importance at the hearing, referring to it as one of many blank drafts that floated back-and-forth during the course of negotiations. This Court is not convinced that the affidavits create a dispute of fact and finds them to be inadmissible and unpersuasive. Parol evidence of a contrary verbal agreement may not be used to vary the terms of a valid, written agreement, and any such verbal agreements are considered waived by or merged into the written manifestation of the parties' agreement. See, e.g., In re Estate of Barry v. Lieberman, 689 So. 2d 1186, 1187 (Fla. 4th DCA 1997). The affidavits do not offer the date of this meeting, and so it does not show whether the meeting predates, is contemporaneous with, or is subsequent to the Operating Agreement, but they do make clear that it was the initial meeting of the organizational process, i.e., at the beginning. Any subsequent verbal agreements would in turn be merged into the later organizational documents. The Operating Agreement, itself, expressly supersedes any prior agreements or understandings and requires that any future amendments be reduced to writing. See, e.g., BFI Waste Systems, Inc. v. Broward County, 265 F.Supp.2d 1332, 1346 (S.D. Fla. 2003) (finding no subsequently executed written instrument amending the governing contracts in compliance with those contracts' stated procedure for amendment of terms).

Invocation of the parol evidence rule is further supported

by the Plaintiff's endorsement of the Operating Agreement as demonstrating a valid written expression of the parties' business relationship. Although the Plaintiff vigorously refutes the Operating Agreement's validity in relation to the instant Motion for Summary Judgment, the same contract has otherwise served as a cornerstone to the Plaintiff's litigation. This is not the first occasion that the Operating Agreement has been attached as an exhibit to a pleading in this case. As one example, Exhibit 1 to the Plaintiff's November 27, 2002 Reply in support of its Emergency Motion for Temporary Injunction and for Order to Show Cause Why Defendant Should not be Held in Contempt is entitled "Operating Agreement for JB Kart Sport LC". This Agreement is identical to the one discussed above except that it is dated after the Articles of Organization and is more completely filled out. The preamble states:

> THIS OPERATING AGREEMENT ("Agreement") is made and entered into as of July _____, 1998 by and among JB KARTSPORT, L.C. (the "Company"), a Florida limited liability company, FKP-USA, INC., a Florida corporation ("FKP"), and JB KART SPORT BVBA ("JB"), a company organized under the laws of Belgium (FKP and JB are sometimes individually referred to herein as a "Member" and collectively as the "Members").

The very next paragraph reads:

> WHEREAS, the Articles of Organization (the "Articles") legally creating the Company was filed with the Department of State of the State of Florida on June 11, 1998 pursuant to the provisions of Chapter 608 of the Florida Statutes ("Act") and the Articles are approved and the filing thereof ratified;

Article VIII regarding the company's management is the same as

that expressed in the Agreement discussed above:

> 8.1  Management Vested with Members. The overall management
> and control of all aspects of the business and affairs of
> the Company shall be vested exclusively in the Members. Any
> action taken by the Required Vote of the Members shall
> constitute the act of and serve to bind the Company. FKP
> shall manage the day-to-day business operations of the
> Company on behalf of the Members. An initial budget and
> pricing list shall be attached as Exhibit B to this
> Agreement, which shall be updated from time to time by the
> Members. In addition, FKP shall conduct the day-to-day
> business operations of the Company in accordance with an
> action plan to be agreed upon by the Members promptly
> following the execution of this Agreement. Furthermore,
> following the execution of this Agreement the Company shall
> enter into an agreement with JB Kartsport BVBA to be JB's
> exclusive distributor of karts in the United States. Without
> limiting the generality of the foregoing, the Required Vote
> of the Members shall be required to authorize any Member on
> behalf of the Company, to: (a) [prosecute any legal
> action].

Interestingly this July copy of the Operating Agreement is signed by no one, but the Plaintiff relies upon it unquestionably, arguing that "JB Belgium's conduct should be enjoined by this Court because it violates the terms of the Operating Agreement which precludes JB Belgium from directly or indirectly soliciting [Kartsport LC]'s customers, and otherwise competing with [Kartsport LC]. See Operating Agreement, attached as Exhibit 1." This reference to JB Belgium's alleged violation of Article IX (Covenant Not to Compete) of the Operating Agreement not only serves as a foundation of the instant suit, but also underpins a related suit filed independently and very much afterwards. In the case of JB Kartsport, L.C. v. Karting Concept Co. BVBA, Case No. 03-80017-CIV-HURLEY/LYNCH, the

Plaintiff alleges that it and JB Belgium entered into a written operating agreement in 1998 and that the named defendants are violating that agreement's non-compete clause. It is also alleged therein that the owner of JB Belgium is part owner of defendant Karting Concept Co. Lastly, in that Amended Complaint, dated August 25, 2003, the Plaintiff states that it "had an existing business relationship with JB Belgium as per the Distribution Contract and the Operating Contract as stated above." The Plaintiffs have since voluntarily dismissed that suit.[2]

Although the Plaintiff seeks to enforce Article IX of the Operating Agreement, it has since taken the self-serving position that the agreement is not valid in order to avoid the preclusive effect of Article VIII. The result is an inconsistent position taken before this Court — one that this Court cannot reconcile and one that has apparently gone unnoticed by the lawyers, both of whom were also involved in Judge Hurley's case. The Plaintiff's prosecution of the alleged breach of the Distribution Agreement has steadfastly relied upon the Operating Agreement as

---

[2] The parties dispute whether Kartsport LC's statements in its pleadings amount to a conclusive, judicial admission. Even assuming that they do not (i.e., by virtue of the Plaintiff withdrawing its complaint), they remain competent evidence. See Thyssen Elevator Co. v. Drayton-Bryan Co., 106 F.Supp.2d 1355, 1361 (S.D. Ga. 2000). It is on the basis of the Plaintiff's various statements and assertions in prosecuting the contract, along with the overall circumstances in which Kartsport LC was formed, that this Court finds overwhelming evidence that the Plaintiff regarded the contract as valid and binding.

binding and valid. Not only does the prosecution of these cases amount to action taken in reliance on that agreement, but it is also objective demonstration of the Plaintiff's intent to be bound by it. Vague affidavits by the Agreement's drafters that only now try to refute it hardly amount to a genuine dispute over the its validity.

The consistency that runs through all three governing documents is also compelling. Each identifies either Bekkers or his company, FKP, as manager, and with the exception of the Articles of Organization which is entirely silent on the matter, limits that role to day-to-day operations with all other "material" business matters left to the members. They are consistent with what the Plaintiff now argues — that Bekkers is properly the manager. However the Plaintiff's sole reliance on the Articles of Organization to resolve all managerial issues is myopic, and its use of § 608.422, Fla. Stat., to define the scope of Bekkers' managerial prerogative is specious in light of the other documents, especially the June copy of the Operating Agreement which post-dates the other organizational documents.

This Court is cognizant of the position in which Kartsport LC finds itself. It is party to the Distribution Agreement and is seeking to enforce it and collect damages for its alleged breach. The other contracting party is also its other member. Under the express terms of the Operating Agreement, the Plaintiff must

therefore obtain the consent of that other member (the alleged breaching party) in order to bring the suit. The Plaintiff's argument that the Distribution Agreement and not the Operating Agreement is the focus of the suit does not save the case. The corporate entity must have the proper authority to file the suit in the first place. It is not for this Court to re-word by judicial fiat the contractual agreements of the parties, convoluted as they are. This Court cannot undo these agreements simply because Kartsport LC finds itself in this bind and with a contract that is in a practical sense unenforceable.

Through its own words Kartsport LC has asserted the Operating Agreement as a binding and valid agreement. The Defendant now asserts Article VIII of that Agreement, saying that it has not acquired the requisite vote of the membership. This Court concurs. While a LLC is generally sui juris to bring a suit, Kartsport LC lacks the authority to bring this suit, and it should be dismissed therefore as a party.

II.  Whether Peter Bekkers is a Proper Party to Raise Counts I through V of the Second Amended Complaint.

Peter Bekkers joins Kartsport LC in raising claims against JB Belgium for breach of a distribution agreement (Count I), breach of the implied duty of good faith and fair dealing in Florida contracts (Count II), and tortious interference with business and contractual relationships (Count III). He also joins in Kartsport LC's claims for misappropriation of Kartsport LC's

Page 15 of 26

customer list (Count IV) and conversion of Kartsport LC's
products (Count V), but in their Supplemental Brief (DE 180), the
Plaintiffs concede that these latter two counts should solely be
brought by Kartsport LC. The parties dispute whether Peter
Bekkers can maintain the remaining claims.

The Distribution Agreement, on which the remaining claims
are premised, unambiguously identifies Kartsport LC and JB
Belgium as the only two parties to that agreement:

> This Distribution Agreement (the 'Agreement') is entered
> into as of this 11th day of August, 1999 by and between
> Joost Boxoen Kartsport BVBA, a company organized under the
> laws of Belgium (the 'Company') and JB Kart Sport, L.C. a
> Florida Limited Liability Company ('JBS').

The Agreement is signed by Joost Boxoen on behalf of JB Belgium
in his representative capacity as its president and by Peter
Bekkers on behalf of Kartsport LC in his representative capacity.
No other reference to Mr. Bekkers is made.

While Mr. Bekkers may be manager of Kartsport LC, he is not
a party to the Distribution Agreement or any of the other
contractual agreements at issue other than as a representative of
FKP or Kartsport LC. "It is axiomatic that maintenance of a
contract action requires that the defendant be a party to the
contract at issue." Future Tech Int'l, Inc. v. Tae Il Media,
Ltd., 944 F.Supp. 1538, 1564, 1565-66 (S.D. Fla. 1996)(holding
that the Florida Statute of Frauds barred contract claims against
defendants who were not parties to the agreement sued upon and

that extrinsic evidence may not be used to vary or modify the clear terms of identity of contracting parties). "Privity" is a term that describes those parties who share a relationship with a contract, <u>see</u> <u>Espinosa v. Sparber, Shevin, et al.</u>, 612 So. 2d 1378, 1379-80 (Fla. 1993), and only parties who are in privity may maintain a legal action regarding that contract, <u>see</u> <u>Sumitomo Corp. of Am. v. M/V Saint Venture, et al.</u>, 683 F.Supp. 1361, 1368 (M.D. Fla. 1988). Peter Bekkers is therefore foreclosed from maintaining an action relating to the Distribution Agreement.

Mr. Bekkers does not dispute that he is not in privity with the Distribution Agreement, but argues instead that as a third party beneficiary to that contract, he is also a proper plaintiff. The Plaintiff cites to cases setting forth the general rule for when a third party beneficiary may maintain a suit under a contract, but this Court does not find them applicable. Rather, these cases only underscore the importance that parties to a contract must expressly intend that another primarily or directly benefit therefrom. <u>Compare</u> <u>Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.</u>, 850 So. 2d 536 (Fla. 5th DCA 2003)(confidentiality agreement), <u>Henderson v. Idowu</u>, 828 So. 2d 451 (Fla. 4th DCA 2002)(arbitration agreement), <u>Decarlo v. Griffin</u>, 827 So. 2d 348 (Fla. 4th DCA 2002)(escrow agreement). There is no such expression in the various agreements between Kartsport LC, JB Belgium, and FKP, nor is the nature of these agreements —

formation of a limited liability corporation and distribution agreement — of the type that generally would point to a third party beneficiary as in the case of a fiduciary or escrow relationship. The principal contract under which the Plaintiffs are suing — the Distribution Agreement — runs to the benefit of Kartsport LC. Although the Operating Agreement and attendant agreements appoint Mr. Bekkers as its manager, that arrangement at best places him in a position of deriving only an incidental or consequential benefit from the Distribution Agreement. This is insufficient to convey standing upon him to sue for its breach.

As a matter of law, Plaintiff Peter Bekkers is not a proper party to bring Counts I through V, and the party that would otherwise have such standing, co-Plaintiff Kartsport LC, lacks the authority to do so. It follows then that these counts should be dismissed in their entirety.

III. Whether the Statute of Frauds bars Counts VI through IX.

Counts VI through IX of the Second Amended Complaint are claims by Peter Bekkers (but not Kartsport LC) against JB Belgium arising from an alleged oral contract between him and JB Belgium (presumably through Mr. Joost Boxoen). The Plaintiff alleges that he "and JB Belgium entered into an oral contract (the "Oral Contract") whereby they would form the corporate entity of [Kartsport LC] for the purposes of marketing and distributing JB Belgium's products for a period of at least ten years." The

Plaintiff alleges further that after only three years, JB Belgium breached the Distribution Agreement, is attempting to drive Kartsport LC out of business, and is attempting to dissolve Kartsport LC, all in breach of the Oral Contract. Counts VIII (breach of contract in forming Kartsport LC) and IX (breach of implied duty of good faith and fair dealing) specifically concern this Oral Contract.

This Court notes first that all of the purported terms of the Oral Contract have been memorialized in later written contracts. Breach of these superseding contracts are the basis of the primary counts to the Second Amended Complaint, and to that extent, suing under the Oral Contract is superfluous. Construing the Oral Contract in the light most favorable to the Plaintiff, however, this Court assumes as true that it does constitute some separate contract,[3] but because it is oral, the Plaintiff must demonstrate the contract's enforceability. Florida's Statute of Frauds renders unenforceable "any agreement that is not to be performed within the space of 1 year from the making thereof," unless it is in writing. See § 725.01, Fla. Stat.; Rubenstein v.

---

[3] In his Supplemental Memorandum of Law (DE 180) the Plaintiff describes the Oral Contract as "a separate contract than [Kartsport LC's] Articles of Organization or any purported operating agreement. Indeed, the oral contract was a contract whereby JB Belgium and Bekkers agreed that they would be forming JB Florida in the future, and Bekkers would be performing the services necessary to create a market for JB Belgium's product prior to JB Florida's formation."

Primedica Healthcare, Inc., 755 So. 2d 746, 748 (Fla. 4th DCA
2000). This is a well-settled rule of Florida law. See Dwight v.
Tobin, 947 F.2d 455, 459 (11th Cir. 1991).

    The Plaintiff argues first that because the parties formed
Kartsport LC within a year of their agreement (of note, the
Plaintiff does not date its Oral Contract), the contract falls
outside the statute's scope. This argument, however, ignores the
Plaintiff's clear pleadings and other descriptions of the Oral
Contract. The contract is not to form Kartsport LC, and indeed,
that corporate entity was in fact formed so there could be no
breach. It is rather an agreement whereby Bekkers would create a
market for JB Belgium's products over the span of ten years, for
which the creation of Kartsport LC was the intended vehicle for
the distribution operation. The fact that Kartsport LC happened
to be formed within one year is not relevant, but rather the
expected duration of Bekkers' performance which would have been
for ten years. Nor does the Plaintiff cite to legal authority or
offer a reason why his claim for breach of implied duty and good
faith and fair dealing in regards to the Oral Contract should
survive independently of the breach of Oral Contract claim.
Because the Florida Statute of Frauds renders the Oral Contract
unenforceable, Counts VIII and IX, which are premised upon that
alleged contract, are therefore dismissed as a matter of law.

    The Plaintiff also raises a count of fraud (Count VI) and

fraudulent inducement (Count VII), but both make the same allegation that JB Belgium deceitfully promised to create a business entity to market its products in the U.S. if he promised to distribute the products for ten years. Bekkers performed on his promise and expended great effort and expense in marketing JB Belgium's products, but after three years, JB Belgium moved to cancel the Distribution Agreement, steal Kartsport LC's customers, and cause its dissolution. The Plaintiff's fraud allegations could also be easily read as an exchange of consideration in the formation of a bilateral contract and its subsequent breach, and in this way are quite similar to his claim of a breach of the purported Oral Contract.

    To state a cause of action for either fraud or fraudulent inducement under Florida law, a plaintiff must allege that the defendant misrepresented a material fact. See Mergens v. Dreyfoos, 166 F.3d 1114, 1117 (11th Cir. 1999), Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 742 (11th Cir. 1995). There is only one way to construe the Plaintiff's pleadings — the Defendant's alleged fraudulent misrepresentation consisted of a promise to perform in the future. This stands in contrast to the situation where a party misrepresents something's existing condition, e.g., the benefits of a property subject to a contract for sale. Compare Attanasio v. Excel Development Corp., 757 So. 2d 1253, 1255 (Fla. 4th DCA 2000). More importantly, this

is the same promise to perform that this Court finds to be barred by the Statute of Frauds. "Because the Statute 'bars any claim which requires as its gravamen, proof of a promise or agreement' not reduced to writing, '[t]here is no distinction between an action ex contractu and an action ex delicto in this regard.'" Eclipse Med. Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F.Supp.2d 1334, 1345 (S.D. Fla. 1999)(citation omitted). Any attempt to reformulate an oral agreement as a misrepresentation is explicitly prohibited under Florida law. See id. Even if the Defendant had no intention of following through on its promise, the Plaintiff cannot circumvent the Statute of Frauds "by suing for fraud when the action is predicated upon an oral agreement." Id. The Statute of Frauds therefore renders Counts VI and VII defective as a matter of law, as well[4].

What remains are Count X for unjust enrichment and Count XI for quantum meruit. In Count X it is alleged that

---

[4] Count II of the Defendant's Amended Counterclaim and Third-Party Complaint presents the mirror allegation. Therein the Defendant alleges that Mr. Bekkers and FKP made certain statements, factual representations, and promises without the intent to honor them. These representations were material to the Defendant's decision to form Kartsport LC, become a member, and to enter into the distribution and operating agreements. This count suffers from the same Statute of Frauds defect as the Plaintiffs' fraud counts, and counsel for the Defendant conceded as such at the second hearing on the Motion. Counsel stated further that a contractual relationship existed between FKP and Kartsport, and that Bekkers was not a proper party. As it does with the fraud counts found in the Complaint, this Court finds that the Defendant's fraudulent inducement count is likewise due to be dismissed.

Plaintiff Bekkers developed an American client base for the
Defendant's products that did not exist previously, thereby
conferring a benefit upon the Defendant for which Bekkers has not
been justly compensated. Count XI similarly seeks compensation
for services rendered. The uncontroverted facts are that the
Defendant entered into a Distribution Agreement with Kartsport
LC, effectively hiring that company to market its product in the
U.S. The two owners of Kartsport LC (the Defendant and FKP)
effectively hired, in turn, the Plaintiff Bekkers to manage it.
In this way, Bekkers was providing services for the benefit of
Kartsport LC. It is also uncontroverted that this arrangement is
expressly set forth by contract.

Where an express contract exists, quasi-contract claims such
as unjust enrichment and quantum meruit fail. See ThunderWave,
Inc. v. Carnival Corp., 954 F.Supp. 1562, 1566 (S.D. Fla. 1997).
The claim also fails because Bekkers is not the proper party to
sue JB Belgium. Because the contract for marketing services runs
between Kartsport LC and JB Belgium, it is more properly
Kartsport LC's claim for compensation. Viewed from another angle,
Bekkers provided his services to Kartsport LC and not to JB
Belgium. Plaintiff Bekkers thus attempts to usurp Kartsport LC's
position in the contract, but to allow Bekkers to maintain these
quasi-contractual claims would subject the Defendant to double
liability. Assuming that the Defendant did unjustly compensate

for distribution- and marketing-related benefits it acquired, Plaintiff's claims would render it liable to both its distributor and that company's operating officer for the same harm. Counts X and XI are therefore dismissed.

The Plaintiffs have recently notified this Court that the Defendant, JB Belgium, surreptitiously and voluntarily initiated bankruptcy/liquidation proceedings under Belgian law and then reorganized under the different name of Deka, NV. This was done sometime in September 2003, and the Defendant did not notify this Court or any other party to this lawsuit of the name change. The news apparently caught Defendant's counsel by surprise as well, precipitating his counsel to file a Motion for Leave to Withdraw. Mr. Dervishi states that he first learned of the liquidation from opposing counsel, and that on October 22, 2003, JB Belgium's president acknowledged the liquidation and name change, and on October 27, 2003, the Belgian attorney serving as trustee over the company confirmed it. As noted above, this is a voluntary liquidation, and the Defendant does not come forth to show how it remains a legal entity capable of maintaining the remainder of its claims (Count I for dissolution, Count VI for declaratory relief, and the mismanagement claims of Count III for breach of fiduciary duty, Count IV for accounting, and Count V for constructive trust and equitable lien). As a consequence, all of its pleadings are due to be stricken and its claims dismissed.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment is **GRANTED IN PART**. The Plaintiff Kartsport LC lacks authority to bring suit against the Defendant, and therefore all counts raised by it are **DISMISSED**. With respect to Plaintiff Peter Bekkers, he asserts claims for which he is not a proper party (Counts I through V), are barred by the Statute of Frauds (Counts VI through IX), or are otherwise defective as a matter of law (Counts X and XI). Therefore these counts are also **DISMISSED**. As a consequence, the Plaintiffs' Second Amended Complaint is dismissed in its entirety. Count II of the Amended Counterclaim and Third-Party Complaint is likewise **DISMISSED** on this Court's own motion. It is further,

**ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment is **DENIED IN PART** with respect to its claim for dissolution. Rather, its Amended Counterclaim and Third-Party Complaint are **DISMISSED** on this Court's own motion in light of the Defendant's voluntarily liquidation. It is further,

**ORDERED AND ADJUDGED** that in light of this Court's finding that Kartsport LC lacks authority to bring the instant suit, the injunction entered on July 10, 2002 upon the "Agreed Order Granting the Plaintiff's Emergency Motion for Entry of a Preliminary Injunction" (DE 11) is therefore **DISSOLVED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this

_5th_ day of November, 2003.


_____
FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE


cc:  Brian S. Dervishi, Esq.
     David J. Feingold, Esq.